Raymundo Pacello, Jr., Esq. (S.B. #207694)
"Legal Baller"SM - "Sapere aude"
A PROFESSIONAL LAW CORPORATION
INGERSOLL-TUTTON HISTORIC BUILDING
832 Fifth Avenue, Suites 2, 3, 4, & 5
San Diego, CA 92101
Ph: (619) 531-8831
Fax:(619) 374-2975
Email: legalballer@yahoo.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael T. Pines | ) |
| | ) |
| Plaintiff, | ) COMPLAINT |
| | ) |
| | ) CASE NO: '13CV0543 JLS  BGS |
| v. | ) |
| | ) JURY DEMAND |
| PNC Bank, N.A., U.S. Bank N.A., Citigroup Mortgage Loan Trust, Wolfe & Wyman LLP, Pite Duncan LLP | ) |
| | ) |
| Defendants. | ) |

Plaintiff, complains as follows against Defendants:

## PRELIMINARY STATEMENT

1. This is an action brought under the FDCPA, 15 U.S.C. §§ 1692k et seq. and related claims, and seeks, statutory damages, actual damages, punitive damages, declaratory relief, and attorney's fees.

## INTRODUCTION

2. At its core, this case is about predatory lending practices, and the biggest fraud ever perpetrated in the U.S. – securitization and the efforts to foreclose on and evict homeowners, mostly using forged and/or fraudulent documents ("robo-signing").

3. Notably, many of the parties who actually loaned Plaintiff money in the first place ("Investors") and many government agencies have filed their own legal action,s based at least in part on the very same allegations of predatory lending and criminal acts in connection with the collection of the loans Plaintiff was subjected to.

4. Plaintiff obtained financing on his home ("Subject Loan"), and is the true owner of his former home, 5 West 500 South, Salt Lake City, Utah ("Subject Property") and other properties which PNC, Citigroup, and U.S. Bank N.A. claim to have an interest in.

5. They are complete strangers to the loans and have attempted to wrongfully foreclose on Plaintiff's home. They and their attorneys filed fraudulent claims in Plaintiff's bankruptcy, withdrawing the claims admitting by implication the impropriety, and seeking relief from stay using fraudulent documents.  This conduct has resulted in countless courts across the country sanctioning the "Too Big To Fail Banks" and their attorneys.

6. Countless suicides and murders during the eviction process have occurred in other cases. This action is to seek redress and restore to Plaintiff the financial security that he had prior to this predatory assault on his finances.

7. Plaintiff's loans were securitized.  As is typical when a loan is securitized, the funds Plaintiff borrowed did not come from any source that Plaintiff could readily identify.  Instead, the money came from "Investors," the identity of whom was concealed by those involved in originating the loan ("Originators"). The Investors involved in the pools into which some of Plaintiff's loans were placed have also filed many lawsuits.

8. To further perpetrate the fraudulent scheme, the Mortgage Electronic Registration System ("MERS") was created which has ruined the chain of title on tens of millions of properties throughout the U.S.  Many state and local governments have filed suit and there are countless class actions pending against MERS.  (See e.g., legal action by the State Attorney

General of Kentucky [2013]; http://goo.gl/IqkxA).

9. Securitizers hire law firms, and others who know or should know collection of loans, such as the Subject Loans, are improper and routinely conceal information concerning such to the victims, public, and the courts. (See, *In Re Nosek* 544 F. 3d 34 (1st Cir. 2008) California Law Firm sanctioned tens of thousands of dollars by Massachusetts's appellate court and reported to the California State Bar).

10. The U.S. Supreme Court has found that these law firms may be held liable under the Fair Debt Collection Practices Act. (See, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.*, 130 S. Ct. 1605 (2010)). Subsequent cases have ruled that foreclosure attorneys are liable for falsely claiming that parties to securitization have the right to foreclose when they don't. *Wallace v. Washington Mutual et. al.* (6th Cir. 2012) (http://www.ca6.uscourts.gov/opinions.pdf/12a0197p-06.pdf)

11. The above facts, and far more, are widely stated in legal actions by the Investors, publicized in countless books, articles, movies, and on the Internet such that Defendants knew or should have known of the above facts. To put it succinctly, Defendants and each of them knew or should have known they had no right to foreclose. One such "foreclosure mill attorney" has had his license disciplined by the California State Bar. (Attorney David Endres, who simply had an associate at his firm take over and continue to engage in the same criminal conduct as has occurred in with other eviction mill law firms throughout the U.S.)

PARTIES

12. Plaintiff, Michael T. Pines, is an individual residing in San Diego, California.

13. Defendant. PNC, N.A., is a national bank, doing business in San Diego, California.

14. Defendant, U.S. Bank N.A. is a national bank doing business in San Diego, California.

15. Defendant, Citigroup Mortgage Loan Trust is a national bank doing business in San Diego, California.

16. Defendant, Wolfe & Wyman LLP is a law firm, doing business in San Diego, California.

17. Defendant, Pite Duncan LP is a law firm doing business in San Diego, California.

## JURISDICTION AND VENUE

18. This Court has jurisdiction under the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k, and pursuant to supplemental jurisdiction, 28 U.S.C. § 1367. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (c). Plaintiffs' action for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

FACTS

19. Plaintiff obtained loans from National City Mortgage, in about 2006 ("the Subject Loans").

20. The funds for the loan were provided by Investors, and fraud was committed in the securitization process as alleged above, and as set forth in countless securities actions around the country.

21. The Subject Loan was secured by Plaintiff's home.

22. There was subsequent foreclosure related activity on the Subject Loan that was fraudulent in that forged and/or unauthorized documents were recorded to foreclose ("robo-signing"). For example, neither party shown as the original "lenders", were named in any of the foreclosure documents that were recorded. Instead, complete strangers were named.

23. During the original closing of the Subject loans, "Originators" acquired the Subject Loan evidenced by a promissory note and secured by a trust deed on the home. The terms of the Subject Loan was memorialized in a promissory note. The deeds of trust identified various parties as the "lenders". This was false and misleading because, inter alia, the funds came from Investors. In agreeing to sign the loan documents and to encumber the Subject Property with a deeds of trust, Plaintiff relied upon promises made by the Originators.

24. The Originators concealed from Plaintiff their intent to securitize the loans and the identity of the parties providing the funds for the loans.

25. Subsequently, the amounts claimed to be in default were incorrect and/or included charges not permitted under the loan documents. This was admitted in footnotes filed in Plaintiff's bankruptcy.

26. The Notice of Default ("NOD") stated, inter alia: "NOTE(S) FOR THE ORIGINAL

[Trust Deed] … are presently held by the undersigned… ." This was false. The foreclosing parties did not hold the notes.

27. Defendants, in committing the acts alleged in this Complaint, are engaging in a pattern and practice of unlawful activity. In making misrepresentations to the courts and pursuing the non-judicial foreclosures, Defendants represented that they had the right to payment under the Note in connection with the Subject Loan, payment of which was secured by a deed of trust. Whereas, in fact, the Defendants knew they were not in possession of the Note and they were neither holders of the Note or assignees of the Note or trust deed entitled to payment and therefore they were proceeding to foreclose without rights under the law.

28. The final stage of a foreclosure proceeding is a sale of the property through a public auction at which the current beneficial owner of the right to foreclose is the only lawful party who can provide instructions to the trustee on the amount of money to accept at the sale or to "credit bid" up to the amount owed on the loan. In fact, none of the Defendants, or any of their authorized agents, who have played a part in the non-judicial foreclosure proceedings were entitled to receive payment from the loan proceeds, or title to, or possession of the Subject Property. The making of the assertion made in foreclosure proceedings that the beneficiary named on the trust deed was entitled to foreclose and any notice of default was based on amounts not properly owing, was and is an act of fraud or deceit.

29. The intent to securitize, the fraudulent acts and omissions involved in the origination, transfers of the Subject Loans, securitization of the Subject Loans, and fraudulent documents recorded were concealed from Plaintiff. The lack of authority for persons signing and forgeries on the recorded documents was concealed from Plaintiff.

30. The true facts are that Defendants were fully aware that Plaintiff's loans were securitized, and that they had no legal right to foreclose, and intentionally concealed this in order to steal the Subject Property.

**FIRST CAUSE OF ACTION**

Violation of the FDCPA, 15 U.S.C. § 1692

(Against All Defendants)

31. Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

32. All of the Defendants are debt collectors because they were engaged in attempts to collect loans for the Investors, mostly institutional investors and/or wealthy individuals who actually provided the funds for Plaintiff's loans.

33. Defendants have concealed the roles of the parties and Plaintiff is unsure who the other "debt collectors" of the loans are.

34. Federal law (the FDCPA) prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt..."

35. In making misrepresentations in processing a foreclose on Plaintiff's home, the Defendants:
   a. made false, deceptive and misleading representation concerning their standing to foreclose on the plaintiff and their interest in the debt;
   b. falsely represented the status of the debt, in particular, that it was due and owing to defendants;
   c. falsely represented or implied that the debt was owing to defendants as an innocent purchaser for value, when in fact, such assignment had not been accomplished;
   d. threatened to take action, namely engaging in collection activities and collection and foreclosure proceedings that cannot legally be taken by them.

36. Defendants discovered that that the assignments and proper documents to collect the Subject Loans could not actually be located. To solve the problem of missing assignments, and other documents, new documents were made and recorded. Most of these documents, including those allegedly affecting the notes and mortgages for Plaintiff's residence contained false statements. The documents were prepared by specially selected law firms and companies that specialized in providing "mortgage default services" to banks and mortgage companies and which are the subject of many pending criminal investigations.

37. The foregoing acts and omissions of Defendants constitute violations of the FDCPA,

including, but not limited to, 1692c, 1692d, 1692e, 1692f, 1692g, and 1692i.

38. Plaintiff is entitled to recover equitable relief, statutory damages, actual damages, reasonable attorney's fees, and costs.

## SECOND CAUSE OF ACTION

VIOLATION OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES

ACT ("Rosenthal Act")

California Civil Code § 1788, et seq.

(Against All Defendants)

39. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the above paragraphs of the Complaint herein as though set forth in full

40. "Debt collectors" named in this cause of action are subject to the Rosenthal Act.

41. Defendants' actions constitute a violation of California Civil Code § 1788 et seq., also known as the Rosenthal Act, in that they threatened to take actions prohibited by law, including, without limitation: falsely stating the amount of a debt; increasing the amount of a debt by including amounts not permitted by law or contract; improperly foreclosing upon the Subject Property; and using unfair and unconscionable means in an attempt to collect a debt

42. Defendants' misconduct has caused Plaintiff to suffer actual damages.

43. As a result of Defendants' misconduct, Plaintiff is entitled to actual damages and statutory damages in an amount to be determined at trial.  Moreover, said Defendants' misconduct was willful, malicious, and outrageous, and therefore punitive damages are warranted and demanded.  These remedies under the Rosenthal Act are cumulative under *Gonzalez v. Arrow Financial Services, LLC*, — F.3d —, 2011 WL 4430844 (9th Cir Sept. 23, 2011).

44. Pursuant to the controlling contractual document(s) and applicable law, Plaintiff is entitled to recover costs and reasonable attorneys' fees.

xxxxxxxxxxxx

xxxxxxxxxxxx

## THIRD CAUSE OF ACTION

VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200

(Against All Defendants )

45. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained above of the Complaint as though set forth in full.

46.  Defendants committed unlawful, unfair and/or fraudulent business practices, as defined by California Business & Professions Code § 17200, by engaging in unlawful, unfair and fraudulent business practices as alleged herein.

47. As a result of Defendants' misconduct, Plaintiff has suffered various damages and injuries according to proof at trial.

48.  Plaintiff seeks injunctive relief enjoining Defendants from engaging in unfair business practices described herein.

49.  Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## FOURTH CAUSE OF ACTION

(Accounting As To Defendants PNC Bank, N.A., U.S. Bank N.A., Citigroup Mortgage Loan Trust)

50. Plaintiff re-alleges and incorporates by reference all of the allegations set forth above.

51. Plaintiff has no obligation to tender any amounts that may be owing on the Subject Loan (*Worchester v. Rosner*, 811 F.2d 1224 (1987 9th Cir.).  It is likely the Subject Loan was paid in full by "credit enhancements" acquired during the securitization process.

52. However, the amount of money still owed to anyone is unknown to plaintiff and cannot be determined due to the illegal securitization of the aforementioned loans and fraud of the Defendants.

53. Plaintiff demands an accounting.

## PRAYER

WHEREFORE, Plaintiff prays for judgment and order against Defendants, inclusive, as

follows:

1. Declaratory judgment that defendants' conduct violated the FDCPA and an injunction prohibiting such acts in the future;
2. An award of compensatory damages;
3. An award of pre-judgment and post-judgment interest;
4. Awarding Plaintiff his costs and expenses in this litigation, including reasonable attorneys' fees and expenses pursuant to 15 U.S.C. §§ 1692k;
5. An order awarding Plaintiff damages and other compensatory relief as the Court deems proper in the maximum amount allowed by law; including but not limited to actual damages, statutory damages pursuant to 15 U.S.C. § 1692k, and disgorgement, and injunctive relief under California's common and statutory law of unfair business practices
6. Any other further legal and/or equitable relief to which Plaintiff might be entitled at law or which the Court deems proper, according to proof,
7. Exemplary or punitive damages as may be necessary and appropriate to punish and deter any reprehensible or intentional misconduct.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated:          , 2013                              s/Raymundo Pacello